**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darcy Victor,<br><br>    Plaintiff,<br><br>vs.<br><br>State Farm Mutual Automobile Insurance Company, et al.,<br><br>    Defendants. | No. CV-21-01805-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Leave to Amend Complaint or Supplemental Pleading (Doc. 94) (the "Motion"), and Defendant's Statement of Nonopposition in Response (Doc. 95). The Court now rules as follows.

**I.    INTRODUCTION**

To sum up the relevant material facts of this case: this case was originally filed as a breach-of-contract action by Kimberly Sannar against State Farm Mutual Automobile Insurance Company ("State Farm"), alleging that she was owed $250,000 as the beneficiary of decedent John Sannar's insurance policy. (Doc. 1-3 at 6). However, State Farm had already paid out $250,000 to Terry Sutton ("Sutton"), John Sannar's attorney, who wrongfully accepted the money as a personal injury settlement despite knowing that Mr. Sannar had already passed away. (Doc. 74 at 8). In hindsight, the check never would have issued but for Sutton's deception, because under Arizona law a claim for personal injury does not survive in favor of the estate after the injured party dies. (*Id.* at 4; Doc. 24

at 10).

Further complicating this case is the fact that John Sannar was a Medicare beneficiary at the time of his death. (Doc. 84 at 3). The Center for Medicare & Medicaid Services ("CMS") has broad authority to seek reimbursement from the settlement proceeds for benefits it provided to John Sannar following his accident (Doc. 86 at 5), and it is indeed seeking $107,792.52 as such reimbursement (Doc. 24 at 8). *See generally* 42 C.F.R. § 411.22. However, Kimberly Sannar has engaged in a series of administrative appeals seeking a declaration that the $250,000 tendered by State Farm to Sutton was a wrongful death settlement, not a personal injury settlement, and that CMS is therefore unable to obtain reimbursement from those funds. (Doc. 24 at 9).

Plaintiff, who represents Kimberly Sannar's estate, is now, in essence, seeking to combine the existing breach-of-contract case against State Farm with the administrative case against CMS, as all administrative remedies have been exhausted and her CMS case is ripe for federal district court review. *See* 42 C.F.R. § 405.1136. She has already joined Xavier Becerra, in his official capacity as the Secretary of the Department of Health and Human Services (the "Secretary"), as a necessary party under Federal Rule of Civil Procedure ("Rule") 19(a)(1), as she argued that the Court will not be able to accord complete relief among the existing breach-of-contract parties (Plaintiff, State Farm, and Sutton) without resolution of the affiliated CMS dispute. (Docs. 86, 87).

## II.     FACTUAL BACKGROUND

The pending Motion arises out of an increasingly convoluted set of facts. On October 5, 2017, John Sannar became the victim of a pedestrian-vehicle accident in Casa Grande, Arizona. (Doc. 62 at 3). At the time, John Sannar was insured by State Farm and carried an underinsured motorist ("UIM") policy. (*Id.* at 2). The policy provided $250,000 per person and $500,000 per accident in underinsured motorist coverage. (*Id.*). Shortly after the accident, John Sannar retained Sutton to represent him in a personal injury claim against the driver of the vehicle. (*Id.* at 3). Sutton then notified State Farm that he was retained by John Sannar to bring a UIM claim. (*Id.*).

Unfortunately, John Sannar passed away on February 14, 2018. (*Id.*). His daughter, Kimberly Sannar, called Sutton on February 15, 2018, to inform him of John Sannar's passing, but Sutton failed to disclose John Sannar's death to State Farm. (*Id.* at 3–4). As a result, State Farm contacted Sutton and offered to settle John Sannar's UIM claim for $250,000 on February 27, 2018. (*Id.* at 4). Sutton accepted this offer despite being aware that he no longer had legal authority to act on behalf of John Sannar, and he once again did not inform State Farm of John Sannar's death. (*Id.*). On March 2, 2018, State Farm issued a check for $250,000 to "John Sannar, Sutton Law, P.C., His Attorney & Medicare." (*Id.*). Sutton wrote John Sannar's name on the endorsement line and deposited the entire amount into his client trust account on March 13, 2018. (Doc. 68 at 6; Doc. 24 at 8). On April 20, 2018, Sutton disbursed $83,250 to Sutton Law, P.C. as a fee. (Doc. 62 at 5). Kimberly Sannar subsequently obtained outside counsel and demanded that Sutton disgorge the entire $250,000. (*Id.*). Sutton sent Kimberly Sannar's attorneys $181,750, which consisted of $166,750 of State Farm funds and $15,000 received from the at-fault driver, but he retained the $83,250 "fee." (*Id.*). As of May 29, 2024, the entire $181,750 remains in Gage Mathers Law Group's IOLTA trust account, pending further decisions in this case. (Doc. 85 at 2).

On August 13, 2018, the Medicare Benefit Coordination and Recovery Contractor ("BCRC") informed John Sannar's Estate that the Estate was responsible to repay the Center for Medicare & Medicaid Services ("CMS") $107,792.52 for the medical bills associated with the treatment of John Sannar for his injuries relating to the October 5, 2017 accident (the "Medicare Lien"). (Doc. 24 at 8). Thereafter, Kimberly Sannar sought an administrative decision by CMS that its Medicare Lien cannot be enforced against the $250,000 UIM settlement tendered by State Farm, because the settlement should have been the settlement of a wrongful death claim, not a personal injury claim, from which CMS would not be able to recover. (*Id.* at 9). On January 13, 2020, the Recovery Contractor issued an unfavorable decision to Kimberly Sannar, finding that the settlement was for John Sannar's personal injury claim, not a wrongful death claim, and it was therefore

subject to the Medicare Lien. (*Id.*). On August 17, 2020, a Qualified Independent Contractor also issued an unfavorable reconsideration of the Recovery Contractor's determination in favor of CMS. (*Id.*). On December 21, 2020, the Office of Medicare Hearings and Appeals ("OMHA") also denied Kimberly Sannar's reclassification request. (*Id.*).

Kimberly Sannar initiated the current action against State Farm in Arizona state court, seeking to enforce her father's policy for $250,000. (Doc. 1-3 at 6). State Farm removed the case to this Court on October 26, 2021. (Doc. 1). On June 6, 2022, State Farm filed a third-party complaint and crossclaim seeking relief from Sutton for deceptively accepting a settlement payment from State Farm after John Sannar's death. (Doc. 24). On March 31, 2023, State Farm moved for partial summary judgment on its claims for declaratory relief and constructive trust. (Doc. 61 at 2). On October 18, 2023, this Court granted the motion for partial summary judgment, ordering that the $83,250 held by Sutton Law P.C. should be placed in constructive trust, with Sutton appointed as trustee with the sole duty of turning over the entirety of the funds to Kimberly Sannar's attorney. (Doc. 74 at 9). As of October 25, 2023, Sutton claims that he is unable to perform his duty as constructive trustee, as "there is no monies in the Sutton Law P.C. trust account . . . as they have been expended prior to the lawsuit being filed." (Doc. 75 at 2).

On November 7, 2023, counsel for Plaintiff Kimberly Sannar advised the Court that Ms. Sannar had unfortunately passed away. (Doc. 76 at 3). Darcy Victor, personal representative of the estate of Kimberly Sannar, was substituted as Plaintiff. (Doc. 83). On June 18, 2024, Plaintiff moved to join United States Secretary of Health and Human Services Xavier Becerra as a required party under Rule 19(a). (Doc. 86). In her motion for joinder, Plaintiff explained that on May 24, 2024, Plaintiff's counsel Gage Mathers Law Group sent a letter to CMS requesting that their appeal with the Medical Appeals Council ("MAC") at the fourth level be escalated to the federal district court, and on June 6, 2024, the MAC sent a letter to Plaintiff granting her request. (*Id.* at 2). The letter indicated that Plaintiff had 60 calendar days to file an action in district court naming the Secretary of

Health and Human Services as the defendant. (*Id.*). Rather than beginning a new case, Plaintiff requested joinder under Rule 19(a), which this Court granted on July 12, 2024. (Doc. 87).

Now, Plaintiff moves pursuant to Rule 15(a) to amend the original complaint (Doc. 1-3) in this matter, adding a cause of action for review of the Administrative Law Judge's ("ALJ") decision regarding CMS's right to reimbursement of the Medicare Lien. (Doc. 94 at 2–3). Defendant Xavier Becerra, in his official capacity as the Secretary of the Department of Health and Human Services, filed a Statement of Nonopposition in Response to Plaintiff's Motion (Doc. 95), in which he states that while he does not oppose Plaintiff's Motion, he intends to file a motion to dismiss for failure to state a claim and/or misjoinder after the Court identifies the operative complaint (*Id.* at 2).

### III. LEGAL STANDARD

Once the period for amending pleadings as a matter of course has elapsed, Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has set forth various factors a district court should consider when deciding whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### IV. DISCUSSION

#### A. Leave to Amend Under Rule 15(a)(2)

The Court will now consider each of the four *Foman* factors to determine whether to grant leave to amend. The first factor to consider is undue delay. "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*,

902 F.2d 1385, 1388 (9th Cir. 1990). Here, Plaintiff could not seek judicial review of CMS's decision in federal court until the administrative review process had been exhausted and the MAC sent her a letter granting her request. (Doc. 86-2). Plaintiff then had 60 calendar days after receipt of the letter to file an action in district court naming the Secretary as the defendant. (*Id.*). MAC's letter to Plaintiff was sent on June 6, 2024 (*Id.* at 3), and Plaintiff filed her motion to join the Secretary as a defendant on June 18, 2024 (Doc. 86). The Court, therefore, has not identified any undue delay on part of Plaintiff, and this factor weighs toward granting leave to amend.

The next *Foman* factor is bad faith on part of the movant. In the instant case, it appears that Plaintiff has joined the Secretary and seeks leave to amend the original complaint in order to minimize "redundant litigation arising from the same facts and involving the same legal issues." (Doc. 94 at 5). This Court is satisfied that Plaintiff is not bringing this Motion for any improper motives, but is simply seeking to streamline years-long, complicated litigation involving numerous separate entities. Thus, this factor also weighs toward granting leave to amend.

The third factor is undue prejudice to the opposing party by allowing amendment. Prejudice is the "touchstone inquiry" in whether to grant leave to amend under Rule 15(a). *Eminence*, 316 F.3d at 1052 (citation omitted). Plaintiff notes that allowing amendment will not prejudice the Secretary by re-opening discovery, as a review of the ALJ's decision is done *de novo* (Doc. 94 at 6). *Cf. Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (finding undue prejudice where permitting an amended complaint would expose the parties to additional discovery). Most importantly, although the Secretary intends to file a motion to dismiss Plaintiff's complaint, the Secretary "does not oppose Plaintiff's Motion." (Doc. 95 at 2). *See, e.g.*, *G&M Farms Inc. v. E.I. du Pont*, 2024 U.S. Dist. LEXIS 177575, at *4 (E.D. Cal. Sep. 30, 2024) (finding little prejudice to defendants in permitting an amendment where defendants did not oppose the motion). This factor therefore weighs heavily toward granting leave to amend. *See, e.g.*, *Jackson*, 902 F.2d at 1387 ("Prejudice to the opposing party is the most important factor.").

Finally, the Court must consider the potential futility of allowing an amendment. "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (citations omitted). Here, the Secretary's Statement of Nonopposition suggests that allowing amendment could be futile, as the Secretary intends to move for dismissal for failure to state a claim and/or misjoinder regardless of whether the complaint is amended. (Doc. 95). However, Plaintiff argues that she is "absolutely entitled to judicial review of the ALJ's decision," and that current regulations and legal precedent do not foreclose Plaintiff from seeking such review by joining the Secretary to the present case, rather than filing an independent action. (Doc. 94 at 7).

Ultimately, the Court is unable to weigh the merits of these arguments until the Secretary files such a motion. At present, the Court is satisfied that Plaintiff has demonstrated good cause to grant leave to amend, and the *Foman* factors weigh in Plaintiff's favor.

### B.   Relation Back Under Rule 15(c)

Under Rule 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. Proc. 15(c)(1)(B). "Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (citation omitted).

In her proposed First Amended Complaint (Doc. 94-3), Plaintiff seeks declaratory relief against the Secretary in the form of "[a]n administrative determination that CMS's Medicare Lien cannot be enforced against the UIM Settlement because the UIM Settlement should have been the settlement of a wrongful death claim from which CMS could not recover on its Medicare Lien." (Doc. 94-3 at 11). Plaintiff argues that "the amendments

would relate the new cause of action back to the date of the original pleading because the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading (i.e., Medicare's invalid reimbursement right attaching to Kim Sannar's wrongful death proceeds)." (Doc. 94 at 6). If Plaintiff is correct that the amendments relate back to the original complaint, "the cause of action against the Secretary would have been 'filed' on September 21, 2021, well before the 60-day deadline on August 5, 2024 . . . This would mean the Complaint was timely and filed in the appropriate jurisdiction" pursuant to the relevant Medicare regulations. (*Id.*).

Of course, it creates a peculiar legal fiction to "relate back" a cause of action that did not, and could not, accrue until Plaintiff exhausted her remedies through the MAC's administrative appeals process. Nonetheless, it is true that Plaintiff's breach-of-contract case with State Farm and her administrative case against the Secretary are inextricably linked, both having arisen from the erroneous $250,000 settlement of John Sannar's claim after his death.

This Court is guided by the principle that "the relation back doctrine is to be liberally applied," *Asarco, LLC v. Union Pacific Railroad Company*, 765 F.3d 999, 1005 (9th Cir. 2014), "especially if no disadvantage will accrue to the opposing party." *Rural Fire Prot. Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966). Broadly speaking, under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

The Court is therefore satisfied that both Plaintiff's original claims and amended claims arise from a common nucleus of operative fact such that the First Amended Complaint should "relate back" under Rule 15(c)(1)(B). Having already determined that good cause justifies granting Plaintiff leave to amend,

**IT IS ORDERED granting** Plaintiff Darcy Victor's Motion for Leave to Amend Complaint or Supplemental Pleading (Doc. 94).

**IT IS FURTHER ORDERED** that Plaintiff shall file her First Amended Complaint

by **October 31, 2024**.

Dated this 23rd day of October, 2024.

_____
Honorable Steven P. Logan
United States District Judge